IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DUANE C. BERRY, next of kin and
Personal Representative of the Estate of
Wayne Allen Berry, on behalf of the Estate of
Wayne Allen Berry and on his own behalf,

      Plaintiff,

vs.                                                            No. CIV 96-0328 JC/WWD

CITY OF SOCORRO, JOHNNY TRUJILLO,
Chief of Police for the City of Socorro, in his
individual capacity and official capacity,
Officer J. B. GONZALES of Socorro City
Police Department, in his individual capacity,
SOCORRO GENERAL HOSPITAL,
PRESBYTERIAN HEALTHCARE SERVICES,
and HECTOR MALDONADO,

      Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER came on for consideration of Defendants City of Socorro, Johnny Trujillo, and J.B. Gonzales' ("Defendants") Motion for Summary Judgment seeking to dismiss Plaintiff's 42 U.S.C. § 1983 claims filed December 9, 1997 (Docket No. 144). The Court has reviewed the motion, the memoranda submitted by the parties and the relevant authorities. The Court finds that Defendants' Motion for Summary Judgment is not well taken and will be **denied.**

### Background

This action arises out of the death of Wayne Allen Berry ("Berry") at the Socorro County Detention Center ("SCDC"). Duane Berry, brother of the decedent, filed this suit against Defendants

alleging that they denied Berry's due process right to safety and adequate medical treatment; that Defendant Johnny Trujillo and City of Socorro failed to train their police officers in the handling of suicidal individuals; and that the City of Socorro had a custom or policy of placing suicidal individuals in SCDC without proper supervision.

On January 12, 1994, Officer Gonzales responded to a call from Wendy Lewis ("Lewis"), decedent's fiancee. Earlier that day, against medical advice, Berry left the alcohol detoxification program at Socorro General Hospital to which he had voluntarily admitted himself on January 10. Berry became intoxicated and proceeded to Lewis' house. Lewis called the hospital who in turn called Pastor Albert Miller. Pastor Miller, who had befriended Berry at the hospital, came to Lewis' home and convinced Berry to return to the hospital. On their way to the car, Berry ran around the side of the house toward his truck and cut his wrist with a razor blade. Pastor Miller tackled Berry and struggled to keep Berry from cutting his other wrist, his own neck or Pastor Miller. When Officer Gonzales arrived at Lewis' house, he found that Berry had cut his wrist with a blade and was bleeding.

After the emergency medical technicians treated Berry's cut, the Socorro Fire Department transported him to Socorro General Hospital. Lewis testified in her deposition that Officer Gonzales would not let her accompany Berry to the hospital because he was in protective custody and Officer Gonzales was taking him to jail. (Lewis Depo. at 74). Officer Gonzales contends that he transported Berry to jail solely because Dr. Maldonado directed him to do so pursuant to the "emergency mental health evaluation" statute.

Berry was admitted to the emergency room at 5:20 p.m., and Dr. Maldonado first saw him around 6:10 p.m. Dr. Maldonado determined that Berry should be placed on suicide watch and noted

this on Berry's discharge instructions.  Officer Gonzales transported Mr. Berry to SCDC, booked Berry at SCDC under protective custody around 6:35 p.m., and gave Dr. Maldonado's discharge instructions to Tim Townsend, the jailer on duty that night.  The jail trustee observed Mr. Berry alive in his cell around 9:40 p.m.  At 10:10 p.m., Mr. Berry was found dead in his cell, hanging from the top bunk with his t-shirt around his neck.

## Analysis

Defendants move for summary judgment on the grounds that Defendants did not violate Berry's constitutional rights to adequate medical treatment and safety.  Defendants rely on the standard of care established in Estelle v. Gamble, 429 U.S. 97, 104 (1976), to support their qualified immunity defense.  Defendants assert that Plaintiff has not established they were "deliberately indifferent" to Berry's medical needs.  See Sawyer v. County of Creek, 908 F.2d 663, 666 (10th Cir. 1990) (noting it is clearly established that government doctor violates Fourteenth Amendment only by exhibiting deliberate indifference to the serious medical needs of detainee).  Plaintiff argues that, because Berry was not charged with a crime, the correct standard in this case is not deliberate indifference, but rather, the "reasonable professional judgment" standard outlined in Youngberg v. Romeo, 457 U.S. 307 (1982).  Even if the latter standard is correct, Defendants are not entitled to summary judgment if Plaintiff's claim meets the higher "deliberate indifference" standard.

Once the defense of qualified immunity is raised, the plaintiff must demonstrate that:  (i) the defendants violated the law; and (ii) the relevant law was clearly established when the alleged violations occurred.  Gehl Group v. Koby, 63 F.3d 1528, 1533 (10th Cir. 1995).  If the plaintiff demonstrates that defendants' conduct did violate the law, the plaintiff also must show that the

defendants violated a clearly established right "such that a reasonable person in defendant[s'] position would have known the conduct violated that right." Garramone v. Romo, 94 F.3d 1446, 1449 (10th Cir. 1996). If Plaintiff demonstrates that Defendants' alleged conduct violated a clearly established right, Defendants then bear the normal burden of demonstrating that no material facts remain in dispute in order to obtain summary judgment. See Hannulla v. City of Lakewood, 907 F.2d 129, 131 (10th Cir. 1990).

The Tenth Circuit considers and treats claims based on a jail suicide as claims based on the failure of officials to provide medical care to those in their custody. Barrie v. Grand County, Utah, 119 F.3d 862, 866 (10th Cir. 1997). In Barrie, the court held that a detainee does not have a claim based on jail suicide unless the custodian was "deliberately indifferent" to a substantial risk of suicide. 119 F.3d at 869. ("an official or municipality acts with deliberate indifference if its conduct (or adopted policy) disregards a known or obvious risk that is very likely to result in the violation of a prisoner's constitutional rights"). This standard requires that the governmental official or entity knew, or should have known, that the inmate was suicidal, and that the official or entity failed to act affirmatively to protect the inmate.

The New Mexico statute clearly states that a suicidal individual is to be placed in a detention facility "only in cases of extreme emergency for protective custody. . ." NMSA § 43-1-10(D). When such an extreme emergency forces protective custody in a detention facility, the proposed client "shall be provided adequate protection from possible suicide attempts." Officer Gonzales argues he is not charged with the duty to protect the detainee, but rather he is responsible only for transporting that person, pursuant to the statute, the Socorro Police Department's standard operating procedure, and a physician's orders.

In another case claiming inadequate medical treatment, the Tenth Circuit upheld the denial of qualified immunity for the transporting officers who ignored warnings that Plaintiff suffered a fractured neck and could not be moved. Martin v. Bd. of County Comm'rs of County of Pueblo, 909 F.2d 402 (10th Cir. 1990). The fact that the officers were simply executing the warrant pursuant to a court order did not shield them from liability. If a transporting officer cannot ignore a warning of danger without being held liable, he certainly should not be free to place a detainee in danger without consequence. Cf. DeShaney v.Winnebago County Dep't of Soc. Serv., 812 F.2d 298, 304 (7th Cir. 1987) (prison authorities who place an inmate in danger cannot shrug off all responsibility when the danger materializes and injury results). Hence, qualified immunity does not shield Officer Gonzales from responsibility for placing Berry in an allegedly unsafe facility that could not provide adequate protection from possible suicide attempts.

Defendants assert that the Tenth Circuit already has decided this issue in Pino v. Higgs, 75 F.3d 1461 (10th Cir. 1996). In Pino, the appellate court affirmed summary judgment in favor of the officers transporting a detainee pursuant to the New Mexico mental health statute. 75 F.3d at 1468. The issue in Pino regarding the officers' conduct, however, was whether the officers violated the plaintiff's Fourth Amendment right to be free from unreasonable seizure, not whether the officers violated her Fourteenth Amendment rights to adequate safety and medical treatment. Plaintiff does not challenge the reasonableness of Berry's seizure. Instead, Plaintiff contends the officer was deliberately indifferent to Berry's constitutional right to safety or medical care.

Officer Gonzales cannot dispute that he knew Berry was suicidal, or at least that there was a substantial risk Berry would commit suicide. When Officer Gonzales arrived at Lewis' home on January 12, 1994, Berry had cut his wrist with a razor blade and was bleeding. Officer Gonzales

-5-

placed Berry in protective custody pursuant to NMSA § 43-2-10, an action authorized only if Officer Gonzales had "reasonable grounds to believe the person has just attempted suicide." Also, Dr. Maldonado gave Officer Gonzales the discharge papers instructing Berry be placed on "suicide watch." Since he knew there was a risk Berry would commit suicide, the issue is whether Officer Gonzales disregarded that risk, thus failing to affirmatively protect Berry.

Plaintiff has offered evidence that Officer Gonzales told Lewis she could not accompany Berry in the ambulance because he was in protective custody and would be taken to jail. Plaintiff also contends Officer Gonzales assured the hospital staff that SCDC was a safe place to detain Berry. (Burnett Depo. at 102). However, Officer Gonzales testified that it was not his job to notify the jailer on duty to place Berry on suicide watch (Gonzales Depo. at 104) and that he did not really know whether SCDC was a safe place for suicidal individuals. (Gonzales Depo. at 126). Also, Officer Gonzales stated he saw only one jailer on duty the evening of January 12, 1994 (Gonzales Depo. at 39) and that he knew that the jailer's duties included monitoring the downstairs cells, where Berry was held, as well as the upstairs cells and the separate women and juvenile facilities. (Id. at 43). Officer Gonzales testified he thought Berry was suicidal, but that he has had no suicide prevention training. (Id. at 17-18). Viewing this evidence in the light most favorable to Plaintiff, there is sufficient evidence to support a finding that Officer Gonzales violated Berry's clearly established right to adequate medical treatment and safety. See Barrie, 119 F.3d at 868 (noting the legal standard of deliberate indifference is clearly established for the purposes of § 1983).

In addition, Police Chief Johnny Trujillo and City of Socorro are not entitled to summary judgment. Defendant Trujillo and City of Socorro base their argument for summary judgment solely on their claim that Officer Gonzales did not commit any constitutional violation and thus, neither

supervisory nor municipal liability may be imposed on them. But see, Garcia v. Salt Lake County, 768 F.2d 303, 310 (10th Cir. 1985) ("Monell does not require that a jury find an individual defendant liable before it can find a local governmental body liable."). Because I find that there are issues of fact as to whether Officer Gonzales violated Plaintiff's right to adequate medical treatment and safety, this argument fails.

A claim for municipal liability for acts of municipal employees arises if a deprivation of constitutional rights results from a municipal policy, practice, or custom. Monell v. Dep't of Social Servs., 436 U.S. 658 (1978). If the alleged practice or custom is a failure by the municipality to adequately train its police officers, plaintiff must show that the failure to train amounts to deliberate indifference to the rights of persons with whom the police come in contact. Canton v. Harris, 489 U.S. 378 (1989). These Defendants do not address the merits of Plaintiff's "custom or policy" or "failure to train" claims. Panis v. Mission Hills Bank, 60 F.3d 1486, 1490 (10th Cir. 1995) ("Under Rule 56(c), the moving party has the initial responsibility to show that there is an absence of evidence to support the nonmoving party's case."). Therefore, Defendant Trujillo and City of Socorro are not entitled to summary judgment on those claims.

Wherefore,

IT IS ORDERED that Defendants City of Socorro, Johnny Trujillo, and J.B. Gonzales' Motion for Summary Judgment seeking to dismiss Plaintiff's 42 U.S.C. § 1983 claims (Docket No. 144) be and hereby is, **denied.**

DATED this 31st day of March, 1998.

_____
**CHIEF UNITED STATES DISTRICT JUDGE**

Counsel for Plaintiff:					Benjamin Silva, Jr.
							Wayne Suggett
							Silva, Rieder & Maestas
							Albuquerque, New Mexico

Counsel for Defendants City of Socorro,		Mark J. Riley
 Trujillo and Gonzales:					Riley, Shane & Hale
							Albuquerque, New Mexico