IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


DUANE C. BERRY, next of kin and
Personal Representative of the Estate of
Wayne Allen Berry, on behalf of the Estate of
Wayne Allen Berry and on his own behalf,

      Plaintiff,

    vs.                                          No. CIV 96-0328 JC/WWD

CITY OF SOCORRO, JOHNNY TRUJILLO,
Chief of Police for the City of Socorro, in his
individual capacity and official capacity,
Officer J.B. GONZALES of Socorro City
Police Department, in his individual capacity,
SOCORRO GENERAL HOSPITAL,
PRESBYTERIAN HEALTHCARE SERVICES,
and HECTOR MALDONADO,

      Defendants.


**MEMORANDUM OPINION AND ORDER**

      THIS MATTER came on for consideration of numerous motions filed by Defendants Hector Maldonado, M.D., Socorro General Hospital ("Socorro General") and Presbyterian Healthcare Service ("Presbyterian").  The Court has reviewed the motions, the memoranda submitted by the parties and the relevant authorities.

      The Court finds that Defendant Maldonado's (Docket No. 191) and Defendant Socorro General and Presbyterian's (Docket No. 175) motions for summary judgment on the federal claims are well taken and will be granted.  Furthermore, I will not exercise supplemental jurisdiction over

Plaintiff's pendent state claims against Defendant Maldonado or Defendants Socorro General and Presbyterian and, therefore, the remaining motions relating to the state claims will be denied as moot.

## Background

This action arises out of the death of Wayne Allen Berry ("Berry") at the Socorro County Detention Center ("SCDC"). Duane Berry, brother of the decedent, filed this suit against Defendant Maldonado and Defendants Socorro General and Presbyterian alleging that these Defendants committed medical malpractice and collaborated with the city Defendants in violating Wayne Berry's constitutional rights. Presbyterian owns and operates Socorro General, both of which are private entities. Socorro General and Presbyterian employed Dr. Maldonado.

On January 12, 1994, Officer Gonzales responded to a call from Wendy Lewis ("Lewis"), decedent's fiancee. Earlier that day, against medical advice, Berry left the alcohol detoxification program at Socorro General to which he had voluntarily admitted himself on January 10. Berry became intoxicated and proceeded to Lewis' house. Lewis called the hospital who in turn called Pastor Albert Miller. Pastor Miller, who had befriended Berry at the hospital, came to Lewis' home and convinced Berry to return to the hospital. On their way to the car, Berry ran around the side of the house toward his truck and cut his wrist with a razor blade. Pastor Miller tackled Berry and struggled to keep Berry from cutting his other wrist, his own neck or Pastor Miller.

After the EMTs treated Berry's cut, the Socorro Fire Department transported him to Socorro General. Officer Gonzales followed the ambulance to the hospital. Lewis testified in her deposition that Officer Gonzales would not let her accompany Berry to the hospital because he was in protective custody and Officer Gonzales was taking him to jail. (Lewis Depo. at 75-77). Officer Gonzales

contends that he transported Berry to the jail solely because Dr. Maldonado directed him to do so pursuant to the "emergency mental health evaluation" statute, NMSA § 43-1-10 (1993).

Berry was admitted to the emergency room at 5:20 p.m. and Dr. Maldonado first saw him around 6:10 p.m. Dr. Maldonado reviewed the records from Berry's stay at Socorro General. After reading Marcella Wolf's ("Wolf") notes from a mental health consultation with Berry from two days earlier, Dr. Maldonado called her to discuss the alternatives. Wolf recommended that Berry be placed in protective custody at SCDC until the morning because he could not be properly evaluated while he was intoxicated. Dr. Maldonado did not consider Berry suicidal, but because the injury was a suicide gesture, he ordered in the discharge instructions that Berry be placed on "suicide watch." (Maldonado Depo. at 136-37).

Officer Gonzales transported Berry to SCDC, booked Berry at SCDC under protective custody around 6:35 p.m., and gave Dr. Maldonado's discharge instructions to Tim Townsend, the jailer on duty that night. The jail trustee observed Berry alive in his cell around 9:40 p.m. At 10:10 p.m., Berry was found dead in his cell, hanging from the top bunk from his T-shirt.

**Analysis**

Plaintiff alleges that Defendant Maldonado, pursuant to state law and jointly with the City of Socorro, ordered or approved the decision to take Berry in to protective custody at the Socorro County Jail. Plaintiff must allege two things to state a claim under 42 U.S.C. § 1983: (1) that Defendants deprived Berry of a federal right; and (2) that Defendants' conduct constituted state action. See Jojola v. Chavez, 55 F.3d 488, 492 (10th Cir. 1995). Plaintiff initially must show that the conduct of Dr. Maldonado, Socorro General and Presbyterian is "fairly attributable to the State"

in order to hold them liable under § 1983 for a constitutional violation requiring state action. Lugar v. Edmonson Oil Co., 457 U.S. 922, 937 (1982).

For a private party's conduct to be fairly attributable to the State, "[f]irst, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible. . .;" and second, the private party must have "acted together with or. . .obtained significant aid from state officials" or engaged in "conduct otherwise chargeable to the State." Lugar, 457 U.S. at 937.  Plaintiff meets the first part of the test:  the New Mexico statute  made Berry's detention for further evaluation possible.  His allegations fail, however, because these Defendants are not state actors.

Plaintiff urges this Court to find Defendants are state actors because they exercised a function traditionally under the state's authority.  Under the "public function" test, "[i]f the state delegates to a private party a function 'traditionally exclusively reserved to the State,' then the private party is necessarily a state actor." Gallagher v. "Neil Young Freedom Concert", 49 F.3d 1442, 1456 (10th Cir. 1995) (quoting Edmonson v. Leesville Concrete Co., 500 U.S. 614 (1991)).  The Tenth Circuit already has decided that a private doctor's certification pursuant to the New Mexico mental health statute is not "state action" for purposes of § 1983.  Pino v. Higgs, 75 F.3d 1461, 1465 (10th Cir. 1996).

In Pino, Socorro police officers went to plaintiff's residence to investigate her family's report that plaintiff had gone without eating for several days and was despondent.  75 F.3d at 1463.  The officers insisted that the plaintiff let them take her to Socorro General for a psychiatric evaluation. Id. at 1463-64.  At the hospital, Dr. Weiss, the emergency room physician, examined the plaintiff. Dr. Weiss determined that she was severely depressed.  He filled out a form indicating the plaintiff

appeared to be mentally ill and likely to harm herself or others, and that immediate detention was necessary. Id. at 1464. Over the plaintiff's objection, Dr. Weiss certified her transfer to Las Vegas Medical Center for further evaluation, and a sheriff's deputy transported the plaintiff to Las Vegas.

The plaintiff sued Dr. Weiss, contending that the defendants unreasonably seized her in violation of the Fourth Amendment and deprived her of liberty without due process of law in violation of the Fourteenth Amendment. The Tenth Circuit rejected the claim against the doctor because there was no state action.

The appellate court disagreed with both of appellant's state action arguments–including her assertion that the doctor became a state actor when he certified her for transport pursuant to § 43-1-10(A) of New Mexico's commitment statute. The court held that "[a] private physician who certifies a person for purposes of § 43-1-10(A) is not subject to § 1983 liability simply because a state police officer responds by transporting *or detaining* that person . . . a state is not responsible for decisions that 'ultimately turn on medical judgments made by private parties according to professional standards that are not established by the state.'" Id. at 1466 (emphasis added) (citations omitted).

In the present case, Maldonado agreed with Wolf that Berry needed to be evaluated but that he needed to sober up first. Maldonado, in essence, certified Berry for transfer just as did Dr. Weiss in Pino. Maldonado did not exercise a function traditionally that of the state–even Plaintiff agrees civil commitment is not a traditional function of the state. (Pl. Response at 25, citing Rockwell v. Cape Cod Hosp., 26 F.3d 254, 257 (1st Cir. 1994)). Dr. Maldonado's certification is not transformed into state action simply because Berry was temporarily transferred to SCDC, an action authorized by the statute, in lieu of an evaluation facility. Furthermore, certification that "reasonable grounds exist

-5-

to detain a person for evaluation and treatment" pursuant to § 43-1-10 (E) cannot be considered a state function any more than certification pursuant to § 43-1-10(A). See Harvey v. Harvey, 949 F.2d 1127, 1131 (11th Cir. 1992) ("Few activities are 'exclusively reserved to the states' . . . even arrest, detention, and search are not exclusively reserved to the states"), cited with approval in Pino, 75 F.3d at 1466-67.

"[A] State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." Blum v. Yaretsky, 457 U.S. 991, 1004 (1982). As discussed in Pino, the New Mexico statute dictates the procedure that an admitting physician must follow when a person is brought into a hospital for an emergency mental health evaluation. Although the language is mandatory, the "state has no authority to and cannot require the admitting doctor to examine [the patient] anymore than it could require examination of any other person who appeared at the emergency room." Id. at 1466. Hence, even if Maldonado misused his authority granted by the statute, he is not a proper defendant in a § 1983 claim because he is not a state actor. See National Collegiate Athletic Ass'n v. Tarkanian, 488 U.S. 179, 191 (1988) (Fourteenth Amendment no shield to private conduct, no matter how unfair that conduct may be).

Plaintiff's § 1983 claim against Socorro General and Presbyterian fails for the same reason. Plaintiff admits that Socorro General is a "private entity." As discussed above regarding Maldonado, Socorro General and Presbyterian cannot be held liable pursuant to § 1983–whether or not they committed the actions alleged–because their actions are not "fairly attributable to the state." See Harvey, 949 F.2d at 1131-32 (holding private hospital where patient involuntarily committed not

a state actor for purposes of § 1983); see also, Spencer v. Lee, 864 F.2d 1376 (7th Cir. 1989) (same) cited with approval in Pino, 75 F.3d at 1467.

Summary judgment is appropriate if "there is no genuine issue as to any material fact . . . the moving party is entitled to a judgment as a matter of law," Fed. R. Civ. P. 56(c), and if "'there is [not] sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" Biester v. Midwest Health Servs., Inc., 77 F.3d 1264, 1266 (10th Cir. 1996) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). There are no material issues of fact in dispute and Defendants are entitled to judgment as a matter of law on Plaintiff's civil rights claims because they are not state actors.

Finally, pursuant to 28 U.S.C. § 1367(c)(2) and (3), I will not exercise supplemental jurisdiction over Plaintiff's pendent state claims against Defendant Maldonado, Socorro General or Presbyterian. Since no claims remain against these Defendants over which I have original jurisdiction, the remaining state claims for medical malpractice and negligent training or supervision substantially predominate over the federal claims.

Wherefore,

IT IS ORDERED that Defendant Maldonado's Motion for Summary Judgment on Plaintiff's Civil Rights Claims (Docket No.191) and Defendants Socorro General and Presbyterian's Motion for Summary Judgment on Civil Rights Claims (Docket No. 175) be, and hereby are, **granted**. Summary judgment will be entered for Defendants Maldonado, Socorro General and Presbyterian and against Plaintiff as to Plaintiff's 42 U.S.C. § 1983 claims. Plaintiff's pendent state claims against these Defendants are hereby dismissed without prejudice.

IT IS FURTHER ORDERED that the following motions are hereby denied as moot: Defendant Maldonado's Motion to Strike Gerald Fredman as an Expert Witness (Docket No. 187); Defendants Socorro General and Presbyterian's Motion for Summary Judgment on Claims of Vicarious Liability for Acts of Dr. Maldonado, and Claims of Negligent Training and Supervision (Docket No.183), Motion for Summary Judgment on Claims for Punitive Damages (Docket No. 179), and Motion to Strike Clark Newhall's "Supplemental" Report (Docket No. 166).

DATED this 31st day of March, 1998.

_____
**CHIEF UNITED STATES DISTRICT JUDGE**

| | |
|---|---|
| Counsel for Plaintiff: | Benjamin Silva, Jr.<br>Wayne Suggett<br>Silva, Rieder & Maestas<br>Albuquerque, New Mexico |
| Counsel for Defendant Maldonado: | Steven S. Scholl<br>David J. Jaramillo<br>Sharp, Jarmie & Scholl<br>Albuquerque, New Mexico |
| Counsel for Defendant Socorro<br>General and Presbyterian: | Charles K. Purcell<br>Rodey, Dickason, Sloan, Akin & Robb<br>Albuquerque, New Mexico |